United States District Court
Southern District of Texas
**ENTERED**
February 16, 2018
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| THE EDUCATION CREDIT UNION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-15-2583 |
| | § | |
| GREAT NORTHERN INSURANCE | § | |
| COMPANY, UNIFIED BUILDING | § | |
| SCIENCES, INC. AND JOSEPH | § | |
| GORDON, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the court[1] are Defendant Great Northern Insurance Company ("Great Northern") Motion to Exclude Expert Gregory Becker's Testimony (Doc. 49), Plaintiff The Education Credit Union's ("Plaintiff") Renewed Motion to Remand (Doc. 50), and Defendant Joseph Gordon's ("Gordon") Motion for Summary Judgment (Doc. 59). The court has considered the motions, the responses, all other relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Plaintiff's motion to remand be **DENIED** and Gordon's motion for summary judgment be **GRANTED**. Great Northern's motion to exclude expert testimony is **DENIED**.

## I.  Case Background

Plaintiff filed this action in state court alleging claims for

---

[1]    This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  See Doc. 40, Ord. Dated Jan. 27, 2017.

breach of contract, breach of the duty of good faith and fair dealing, and claims under the Texas Insurance Code in connection with denials of insurance claims for hail damage.[2]

## A.  Factual Background

On May 28, 2013, a hail storm damaged five of Plaintiff's properties in Amarillo, Canyon, and Bushland, Texas, and Plaintiff filed a claim with its insurer, Defendant Great Northern.[3]  In early 2015, Defendant Gordon, an adjuster with Great Northern, was assigned to the claim due to an increase in the complexity and scope of the claim and the involvement of an independent adjusting firm.[4]  Upon the recommendation of Gordon, Defendant Unified Building Science ("UBS") was hired to help calculate the damages for the properties.[5]  Gordon sent a payment to Plaintiff on February 25, 2015, based on UBS's damage estimates, and sent a second payment on July 14, 2015.[6]  Plaintiff found these amounts to be insufficient.[7]

## B.  Procedural Background

---

[2]     See Doc. 1-2, Ex. A to Def. Great Northern's Not. of Removal, Pl.'s Orig. Pet.

[3]     See Doc. 33, Pl.'s Am. Pet. p. 3; Doc. 63-1, Ex. A to Pl.'s Resp., Gordon's Dep. p. 19.

[4]     See Doc. 63-1, Ex. A to Pl.'s Resp., Gordon's Dep. pp. 16-19, 23-24.

[5]     See id. pp. 24-26.

[6]     See id. pp. 130-31.

[7]     See Doc. 33, Pl.'s Am. Pet. pp. 4-5.

This action was originally filed on July 24, 2015, in the 113th District Court of Harris County, Texas, and Great Northern removed it to this court on September 8, 2015.[8]  In its notice of removal, Great Northern contended that Defendants UBS and Gordon were fraudulently joined and their citizenship should be disregarded.[9]

On October 8, 2015, Plaintiff filed a motion to remand, contending that the court lacked diversity jurisdiction due to the presence of Gordon and UBS in the lawsuit, as they were also citizens of Texas.[10]  The court denied the motion to remand on January 15, 2016, and counseled Defendants Gordon and UBS to file a motion for summary judgment to establish their claim of fraudulent joinder.[11]  The court also entered a docket control order setting the following pertinent dates: (1) September 2, 2016, for completion of discovery; (2) dispositive motions due thirty days after the mediator declares an impasse; and (3) September 2, 2016, for all other pretrial motions.[12]

On August 26, 2016, by request of the parties, the court extended the deadlines for completion of discovery and all other

---

[8]     See Doc. 1, Def. Great Northern's Not. of Removal.

[9]     See id. p. 2.

[10]     See Doc. 10, Pl.'s Mot. to Remand.

[11]     See Doc. 15, Minute Entry Ord. Dated Jan. 15, 2016; Doc. 50, Pl.'s Mot. for Remand pp. 1-2.

[12]     See Doc. 16, Doc. Control Ord. Dated Jan. 15, 2016.

pretrial motions to October 31, 2016.[13]  These deadlines were later extended to December 16, 2016.[14]  The parties filed a joint motion on December 28, 2016, asking for further extensions of certain deadlines, and Plaintiff requested permission to amend its complaint "to allege [that] Great Northern has waived certain policy provisions that govern damage valuation and should be estopped from arguing the controlling nature of the provision."[15]

  The court granted the motion, allowing Plaintiff to amend the complaint and extended the following relevant deadlines: (1) February 24, 2017, for completion of discovery; (2) March 24, 2017, for all other pretrial motions; and (3) March 24, 2017, for mediation.[16]  On January 27, 2017, the case was referred to the undersigned.[17]

    On February 21, 2017, the parties sought further extensions of the deadlines in the case due to difficulty scheduling several remaining depositions.[18]  This was granted, giving the parties the following new deadlines: (1) completion of discovery by March 10, 2017; (2) all other pretrial motions by April 7, 2017; and (3)

---

[13]   See Doc. 24, Ord. Dated Aug. 26, 2016.

[14]   See Doc. 26, Ord. Dated Oct. 31, 2016.

[15]   See Doc. 31, Joint Mot. to Amend Doc. Control Ord. & Continue Doc. Call.

[16]   See Doc. 32, Ord. Dated Dec. 28, 2016; Doc. 34, Ord. Dated Dec. 29, 2016.

[17]   See Doc. 40, Ord. Dated Jan. 27, 2017.

[18]   See Doc. 44, Joint Mot. to Am. Doc. Control Ord.

mediation by April 7, 2017.[19]  The parties again moved for additional time on April 3, 2017, requesting an extension of the mediation deadline until April 18, 2017, to accommodate a mediation for such date, which the court granted.[20]

On April 7, 2017, Great Northern filed the pending motion to exclude Plaintiff's expert Gregory Becker's ("Becker") testimony, challenging the reliability of his opinion.[21]  On April 13, 2017, Plaintiff filed a renewed motion for remand, arguing that, because the dispositive motion deadline was April 7, 2017, and Defendants were out of time to file a motion for summary judgment, the case should be dismissed for lack of subject matter jurisdiction.[22]  Upon request of the parties, the court extended Plaintiff's deadline respond to the motion to exclude Becker's testimony to May 19, 2017.[23]  The court also vacated the dates for docket call and the joint pretrial order and gave Defendant until May 9, 2017, to file "[a]ny responsive pleading to Plaintiff's renewed motion to remand."[24]  UBS and Gordon filed separate motions for summary

---

[19]     See Doc. 45, Ord. Dated Feb. 22, 2017.

[20]     See Doc. 47, Joint Mot. for Leave to Mediate; Doc. 48, Ord. Dated Apr. 4, 2017.

[21]     See Doc. 49, Def. Great Northern's Mot. to Exclude Becker's Expert Test.

[22]     See Doc. 50, Pl.'s Renewed Mot. for Remand.

[23]     See Doc. 52, Pl.'s Unopposed Mot. for Extension of Time to File Response to Doc. 49; Doc. 53, Ord. Dated Apr. 26, 2017.

[24]     Doc. 53, Ord. Dated Apr. 26, 2017.

judgment on August 16, 2017, but Plaintiff has since settled its claims with UBS and the court dismissed UBS with prejudice on September 14, 2017.[25]

## II.  Scheduling Issue

When the court granted the motion for extension of time in an order dated April 26, 2017, and set dates, it assumed that mediation, extended by prior order to April 18, 2017, had occurred and was unsuccessful.  This order extended the deadline to file any responsive pleading to Plaintiff's renewed motion to remand to May 9, 2017.  Defendants, relying on the fact that the mediator had not filed a notice of an impasse, argue that they had an unlimited time within which to file a motion for summary judgment.  The court cannot subscribe to this interpretation of its order as it places the scheduling of a court matter outside the control or notice of the court.  That said, while the court cannot endorse Defendants' self-serving interpretation of the scheduling order, under the circumstances, it will not punish a party because of its counsel's specious interpretation of the court's orders.  Therefore, the court will consider the merits of all of the pending motions.

## III. Motion to Remand and Motion for Summary Judgment

Plaintiff has moved to remand the case, contending that Gordon was out of time to file his motion for summary judgment and that it

---

[25]    See Doc. 58, Def. UBS's Mot. for Summ. J.; Doc. 59, Def. Gordon's Mot. for Summ. J.; Doc. 65, Ord. Dated Sept. 14, 2017.

has a meritorious claim against him.  Gordon has moved for summary judgment, arguing that Plaintiff's claims against him are invalid. As explained above, the court will consider the merits of the motion for summary judgment, which will inform the court's decision on Plaintiff's motion for remand.

## A.  Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists on any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Stauffer v. Gearhart, 741 F.3d 574, 581 (5th Cir. 2014).  A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001).  To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party.  See Royal v. CCC & R Tres Arboles, L.L.C., 736 F.3d 396, 400 (5th Cir. 2013)(quoting Anderson, 477 U.S. at 248).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues.  Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131

7

(1992).   If the moving party carries its burden, the nonmovant may not rest on the allegations or denials in her pleading but must respond with evidence showing a genuine factual dispute.   <u>Stauffer</u>, 741 F.3d at 581 (citing <u>Hathaway v. Bazany</u>, 507 F.3d 312, 319 (5th Cir. 2007)).

**B.   <u>Discussion</u>**

Plaintiff has alleged claims against Gordon under Sections 541.060(a) and 542.003(b)(5) of the Texas Insurance Code.   Gordon contends that summary judgment should be granted on these claims, as there is no genuine issue of material fact.

Courts have noted that "[t]he joinder of a local claims adjuster in a [Texas] state court action against a non-citizen insurance company in an attempt to avoid federal court jurisdiction apparently has become a popular tactic."   <u>Lopez v. United Prop. & Cas. Ins. Co.</u>, 197 F. Supp.3d 944, 949 (S.D. Tex. 2016)(quoting <u>Gonzalez v. State Farm Lloyds</u>, No. 4:15-CV-305-A, 2015 WL 3408106, at *3 (N.D. Tex. May 27, 2015)(unpublished)).   There are some instances in which adjusters may be found liable under the Texas Insurance Code, but, "for an adjuster to be held individually liable, they have to have committed some act that is prohibited by the section, not just be connected to an insurance company's denial of coverage."   <u>Id.</u> (quoting <u>Messersmith</u>, 10 F. Supp.3d at 724).

**1.   Section 541 of the Texas Insurance Code**

Plaintiff claims Gordon violated Texas Insurance Code §§

("Sections") 541.060(a)(1), (a)(2)(A), (a)(3), (a)(4), and (a)(7).
In its response to Gordon's motion for summary judgment, Plaintiff
argues that Gordon is liable for his decisions and representations,
that a jury could find that he did not engage in good faith and
fair dealing and that he should have conducted the site visits in
this case.  Gordon argues that there is no issue of material fact
on these claims and summary judgment should be granted as a matter
of law.

District courts are split on whether an insurance adjuster may
be held liable under Chapter 541 of the Insurance Code, with
rulings in recent years coming out strongly on both sides.  See,
e.g., Lopez, 197 F. Supp.3d at 950 ("The majority of federal courts
that have addressed [Section 541.060(a)(2)(A)] have found that this
section applies only to insurers, and that it does not apply to
adjusters"); One Way Invs., Inc. v. Century Sur. Co., No. 3:14-CV-
2839-D, 2014 WL 6991277, at *4 (N.D. Tex. Dec. 11,
2014)(unpublished); Messersmith v. Nationwide Mut. Fire Ins. Co.,
10 F. Supp.3d 721, 724 (N.D. Tex. 2014); Mainali Corp. v. Covington
Specialty Ins. Co., 3:15-CV-1087-D, 2015 WL 5098047, at *6 (N.D.
Tex. Aug. 31, 2015)(unpublished); Tommaso v. State Farm Lloyds, No.
7:15-CV-00274, 2016 WL 6883042, at *5 n.75 (S.D. Tex. Sept. 28,
2016)(slip op.); Merrit Buffalo Events Ctr., LLC v. Cent. Mut. Ins.
Co., No. 3:15-CV-3741-D, 2016 WL 931217, at *4 (N.D. Tex. Mar. 11,
2016); but see Roach v. Vehicle, No. 3:15-CV-3228-G, 2016 WL

9

795967, at *5 (N.D. Tex. Feb. 29, 2016)("Numerous courts have concluded that an insurance adjuster may be held personally liable for engaging in unfair settlement practices under Tex. Ins. Code § 541.060(a)(2) . . . The court respectfully disagrees with the recent line of cases concluding that insurance adjusters cannot be held liable under § 541.060(a)(2) because this court finds such a reading unduly narrows the scope of the provision, as it renders the term 'effectuate' superfluous."); Denley Grp., LLC v. Safeco Ins. Co. of Ind., No. 3:15-CV-1183-B, at **3-4 (N.D. Tex. Sept. 30, 2015)(unpublished)("Despite the abundance of case law supporting adjuster liability under § 541.060, however, a few courts have recently begun to question the propriety of holding an adjuster individually liable for unfair settlement practices under § 541.060."). However, the Fifth Circuit and the Texas Supreme Court have held that insurance adjusters may be held liable under Chapter 541. Gasch v. Hartford Acc. & Ins. Co., 491 F.3d 278, 282 (5th Cir. 2007)("Texas law clearly authorizes [Chapter 541] actions against insurance adjusters in their individual capacities."); Liberty Mut. Ins. Co. v. Garrison Contractors, Inc., 966 S.W.2d 482, 486 (Tex. 1998)(finding that insurance company employees are engaged in the insurance business and therefore may be held liable under Chapter 541). In light of this split among the courts, but looking to Gasch, the court will address whether Gordon has raised an issue of material fact on the merits of these claims under Chapter 541 of

the Insurance Code.

Section 541.060(a)(1) prohibits "misrepresenting to a claimant a material fact or policy provision relating to coverage at issue." Tex. Ins. Code § 541.060(a)(1).  In its response, Plaintiff claims that Gordon is responsible for deciding to adopt the UBS estimates, which were lower than Plaintiff's estimate of its damages, and, therefore, the coverage of Plaintiff's claims was misrepresented to Plaintiff.  To state a claim under this section, Gordon would have had to represent to Plaintiff that it "would receive a particular kind of policy that it did not receive" or that Gordon "denied coverage against loss under specific circumstances that it previously had represented would be covered." Messersmith, 10 F. Supp.3d at 724 (quoting U.S. Fire Ins. Co. v. Confederate Air Force, 16 F.3d 88, 91 (5th Cir. 1994)(internal citations omitted)). Neither of these situations arose in this case; Plaintiff is not contending that Gordon misrepresented the type of the policy or that the loss would be covered.  Rather, Plaintiff simply points to the conflict between the experts and the fact that Gordon relied on the UBS opinion, which Plaintiff claims is biased.

In Richardson E. Baptist Church v. Philadelphia Indem. Ins. Co., No. 05-14-01491-CV, 2016 WL 1242480, at *8 (Tex. App.–Dallas Mar. 30, 2016, pet. denied)(unpublished), the court explained that "a bona fide dispute over the extent of coverage does not rise to the level of a violation of section 541.060(a)(1)."  As to reliance

on expert opinions, the court propounded that "[w]hen an insurer relies on the opinions of its experts and there is a conflict of opinions between the experts of the insurer and insured, the insurer is not subject to extra contractual liability 'unless there was also evidence that the information on which the insurance company relied in denying the claim was unreliable or not objectively prepared.'" Id. (quoting Provident Am. Ins. Co. v. Castaneda, 988 S.W.2d 189, 194 (Tex. 1998)).

Plaintiff argues that the difference in damages assessed by UBS and Plaintiff's expert raises a fact issue that the damages UBS calculated, that were relied upon by Gordon, were a misrepresentation. However, Plaintiff merely points to the difference in the numbers calculated and contends that the scope of the damages calculated by UBS was incorrect, which Richardson E. Baptist Church clearly explains is not enough to raise an issue of material fact, as this is a bona fide dispute about the extent of coverage in this case. Summary judgment should be granted on Plaintiff's claim under Section 541.060(a)(1).

Section 541.060(a)(2)(A) of the Texas Insurance Code prohibits an insurer from "failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement" when the liability of the insurer is "reasonably clear." Plaintiff claims that Gordon did not, in good faith, attempt to effectuate a fair and equitable settlement because UBS was biased and Gordon relied on its reports,

which may have been manipulated.

Again, courts are split on whether this provision is applicable to insurance adjusters. <u>Lopez</u>, 197 F. Supp.3d at 950 (citing <u>Merrit Buffalo Events Ctr.</u>, 2016 WL 931217, at *4; <u>Messersmith</u>, 10 F. Supp.3d at 724); <u>but see</u> <u>Roach</u>, 2016 WL 795967, at *5; <u>see also</u> <u>Tommaso</u>, 2016 WL 6883042, at *5 n.75 (acknowledging the split among courts and explaining why <u>Roach</u> is incorrect in finding that Section 541.060(a)(2)(A) can be applicable to adjusters); <u>Doss v. Warranty Underwriters Ins. Co.</u>, No. 04-11-00776-CV, 2012 WL 5874316, at *2 (Tex. App.–San Antonio Nov. 21, 2012, no pet.)(finding that § 541.060 only applies to the relationship between the insured and insurer).

Plaintiff argues that Gordon did not effectuate a fair settlement because he relied on biased evidence. Plaintiff contends that the evidence was not objective in this case because the UBS representative, Randy Heddin ("Heddin") emailed Great Northern to say that he would call "to discuss our findings and what you will need from us to defend this case."[26] Plaintiff argues that because Heddin used the word "defend," UBS was not objective in its assessment of the property damage as a matter of undisputed fact. In his deposition, Gordon states that he did not know why Heddin said "defend."[27]

---

[26]    <u>See</u> Doc. 63-6, Ex. E to Pl.'s Resp., Email from Heddin to Andrea Lozano p. 1.

[27]    <u>See</u> Doc. 63-1, Ex. A to Pl.'s Resp., Gordon's Dep. pp. 100-02.

Additionally, Plaintiff argues that UBS manipulated its pricing, quoting boilerplate language from the Xactimate estimate that "[i]ndividual line item pricing may have been modified from database pricing . . . ."[28]  However, the court agrees with Gordon that this language, alone, does not raise a fact issue that the pricing was manipulated; rather, it appears to be merely standard disclaimer language, as argued by Gordon.[29]  Plaintiff has not presented any evidence that the pricing was manipulated other than speculation, and Gordon testified that he did not know of any pricing that was modified.[30]  Plaintiff has not raised a fact issue that Gordon was biased or based his findings on biased or incorrect information.  As explained above, a mere difference in expert opinions is not enough; there must be evidence of bias.  Summary judgment should be granted on Plaintiff's claim under Section 541.060(a)(2)(A).

Sections 541.060(a)(3) and (a)(4) prohibit "unfair settlement practices with respect to a claim by an insured or beneficiary," including "failing to promptly provide to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or

---

[28]    Doc. 63, Pl.'s Resp. p. 8 (quoting Doc. 63-3, Ex. C to Pl.'s Resp., Scope & Cost Valuation p. 1).

[29]    See Doc. 63-1, Ex. A to Pl.'s Resp., Gordon's Dep. p. 111; Doc. 66, Def. Gordon's Reply pp. 4-5.

[30]    See Doc. 33, Pl.'s Am. Pet. p. 3; Doc. 63-1, Ex. A to Pl.'s Resp., Gordon's Dep. p. 111.

offer of a compromise settlement of a claim" and "failing within a reasonable time to: (A) affirm or deny coverage of a claim to a policyholder; or (B) submit a reservation of rights to a policyholder."  Texas Ins. Code §§ 541.060(a)(3), (a)(4).

Courts have found that these sections cannot be utilized to hold adjusters liable, on the basis that adjusters do not have the authority or obligation to make such decisions.  See Lopez, 197 F. Supp.3d at 950 (citing Mainali, 2015 WL 50980947, at *4 ("[A]n adjuster cannot be held liable under § 541.060(a)(3) because an adjuster has no obligation to provide a policyholder a reasonable explanation of the basis on the policy for the insurer's denial of a claim, or offer of a compromise settlement of a claim."); One Way Invs., 2014 WL 6991277, at *5 ("[A]n adjuster cannot be held liable under [§ 541.060(a)(4)(A)] because an adjuster does not have authority on behalf of the insurer to affirm or deny coverage of a claim to a policyholder.")).  In Lopez, the court also considered the fact that "these particular provisions are aimed at the timeliness of communications to the insured" and the plaintiff had not made allegations of untimeliness against the adjuster, rather focusing on the inadequacy of the investigation performed by the adjuster.  197 F. Supp.3d at 950-51.

Here, even if these provisions apply to Gordon as an adjuster, there have been no facts presented that raise a fact issue that Gordon acted in an untimely manner to provide an explanation of the

settlement or affirm or deny coverage.  Plaintiff does not address these sections of the insurance code in his response.  Rather, as did the plaintiff in <u>Lopez</u>, Plaintiff asserts that Gordon's investigation was unreasonable.  This fails to invoke these provisions of Sections 541.060(a)(3) and (a)(4).  Therefore, summary judgment should be granted on these claims.

Plaintiff also brings a claim against Gordon under Section 541.060(a)(7), which prohibits "refusing to pay a claim without conducting a reasonable investigation with respect to the claim." Tex. Ins. Code § 541.060(a)(7).  Plaintiff argues that a jury may find that a reasonable investigation should have included a visit by Gordon to the sites of hail damage.

In <u>Mainali</u>, the court quoted <u>Messersmith</u> in explaining,

> Like [§ 541.060(a)(2)] the bad behavior that the statute targets is an insurer's refusal to pay under the circumstances.  Those who can be held liable are the insurance company or the individual at the insurance company who refuses to pay the claim, not the individual responsible for conducting the investigation.

<u>Mainali</u>, 2015 WL 5098047, at *4; <u>see also</u> <u>One Way Invs.</u>, 2014 WL 6991277, at *4.  In both cases, the court dismissed claims under Section 541.060(a)(7) brought against the adjuster.

However, in <u>Richardson E. Baptist Church</u>, a Texas court of appeals did not take this approach and instead considered whether the adjuster had violated this provision.  2016 WL 1242480, at *8. The plaintiff argued that the adjuster had violated Section

16

541.060(a)(7) by, at first, estimating the loss value below what the appraisers had set, and then reducing the estimate to match the engineering firm's estimate.  The court concluded that "the mere fact that [the adjuster's] determination of the amount of the loss varied from others is not evidence that his investigation of the claim was not reasonable.  Nor is his reduction of the amount of the estimate to match that determined by Donan Engineering evidence of a lack of a reasonable investigation by [the adjuster]."  Id.

Here, Gordon paid Plaintiff based on site visits and estimates given to him by UBS.  Plaintiff argues that the investigation was not reasonable, pointing to the fact that no employee of Great Northern visited the properties in conducting the investigation. However, UBS did conduct site visits on behalf of Great Northern. Other than speculation, Plaintiff has not raised a fact issue demonstrating why Gordon could not rely on that information. Therefore, even if it is possible hold an adjuster liable under Section 541.060(a)(7), summary judgment should be granted on this claim against Gordon.

### 2.  Unfair Claim Settlement Practices Act

Additionally, Plaintiff brings a claim against Gordon under § 542.003(b)(5) the Unfair Claim Settlement Practices Act, alleging that "Defendant Gordon refused to even offer more than her [sic] own grossly undervalued estimates despite actual damages which were much greater.  This continued failure compelled Plaintiff to file

17

suit.  Tex. Ins. Code § 542.003(5) [sic]."[31]  Gordon contends that this provision only applies to insurers, not adjusters.

Texas Insurance Code § 542.003(b)(5) states that "compelling a policyholder to institute a suit to recover an amount due under a policy by offering substantially less than the amount ultimately recovered in a suit brought by the policyholder" is an unfair claim settlement practice by an *insurer*.  Chapter 542 of the Texas Insurance Code specifically states, in Section 542.002, that this subchapter only applies to certain types of insurers.  See Tex. Ins. Code § 542.002 ("This subchapter applies to the following insurers . . .").  Courts, looking the statutory language, have dismissed claims under Texas Insurance Code § 542.003 against insurance adjusters.  See, e.g., Lopez, 197 F. Supp.3d at 951; Richardson E. Baptist Church, 2016 WL 1242480, at *10 ("[The adjuster's] motion for summary judgment asserted he did not violate section 542.003 because that section regulates the actions of insurers only and not adjusters.  We agree.  Section 542.003(a) states, 'An *insurer* engaging in business in this state may not engage in an unfair claim settlement practice.'  Section 542.003(b) states, 'Any of the following acts by an *insurer* constitutes unfair claim settlement practices . . . .'  Tex. Ins. Code § 542.003(a), (b)(emphasis added).  We conclude that [the adjuster] established as a matter of law that he did not violate chapter 542."); Mainali,

---

[31]    See Doc. 33, Pl.'s Am. Compl. p. 12.

18

2015 WL 5098047, at *6 ("Chapter 542 only applies to specifically listed 'insurers,' and Summers, an adjuster, is not an insurer."). Because Texas Insurance Code 542.003 does not apply to insurance adjusters, this claim against Gordon fails as a matter of law.[32]

## C.  __Motion to Remand__

The jurisdictional statutes allow removal of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."  28 U.S.C. § 1441(a).  A defendant may remove a case in which the amount in controversy exceeds $75,000 and the dispute is between citizens of different states.  See 28 U.S.C. §§ 1332, 1441.  Complete diversity refers to the requirement that the citizenship of each of the plaintiffs must be different from that of each of the defendants.  Stafford v. Mobil Oil Corp., 945 F.2d 803, 804 (5th Cir. 1991).

The doctrine of improper joinder is "a narrow exception to the rule of complete diversity."  Cuevas v. BAC Home Loans Servicing, LP, 648 F.3d 242, 249 (5th Cir. 2011)(quoting McDonal v. Abbott Labs., 408 F.3d 177, 183 (5th Cir. 2005)).  To establish that a non-diverse defendant has been improperly joined, the removing party must demonstrate either: (1) actual fraud regarding jurisdictional facts; or (2) the plaintiff's inability to establish

---

[32]     Additionally, courts have found that "there is no private right of action under the Unfair Settlement Practices Act," interpreting this act to "suggest that only the Texas Department of Insurance can bring a claim under section 542.003." Terry v. Safeco Ins. Co. of Am., 930 F. Supp.2d 702, 714 (S.D. Tex. 2013)(quoting Great Am. Assurance Co. v. Wills, No. SA-10-CV-353-XR, 2012 WL 3962037, at *2 (W.D. Tex. Sept. 10, 2012)(unpublished)).

a cause of action against the non-diverse defendant. Id. (quoting Smallwood v. Ill. Cent. R.R. Co., 385 F.3d 568, 573 (5th Cir. 2004)).

Absent a showing of actual fraud pursuant to the first option, the court must determine, under the second option, whether the defendant has met the heavy burden of demonstrating "that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." Id. (quoting Smallwood, 385 F.3d at 573). If the court finds no reasonable basis to predict that the plaintiff might be able to recover, the conclusion is that the plaintiff's joinder of the non-diverse party was indeed improper. Id.

Here, as the motion for summary judgment has revealed, Plaintiff has not made any valid claim against Gordon. Therefore, if the court agrees and adopts this memorandum and recommendation, Gordon will be dismissed from this lawsuit and the motion to remand should be denied.

## IV.  Motion to Exclude Expert Testimony

Great Northern moved to exclude the testimony of Plaintiff's expert, Becker, contending that his factual foundation and methodology are unreliable.

## A.  Legal Standard

Under the Federal Rules of Evidence and related case law, an expert may be qualified by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. "To qualify as an expert, the witness must have such knowledge or experience in [his] field or calling to make it appear that his opinion or inference will probably aid the trier in [the] search for truth." United States v. Hicks, 389 F.3d 514, 524 (5th Cir. 2004)(internal quotation marks omitted). If an opinion is based solely or primarily on experience, it "must be grounded in an accepted body of learning or experience in the expert's field." Fed. R. Evid. 702, advisory committee's note, 2000 Amends. The witness must connect the experience to the conclusion offered, must explain why the experience is a sufficient basis for the opinion, and must demonstrate the appropriateness of the application of the experience to the facts. Id.

Although an expert need not be highly qualified to testify on a given topic, his testimony on subjects in which he is not minimally qualified must be excluded. Huss v. Gayden, 571 F.3d 442, 452 (5th Cir. 2009). An additional limitation on expert witnesses is that they may not offer conclusions of law. C.P. Interests, Inc. v. Cal. Pools, Inc., 238 F.3d 690, 697 (5th Cir. 2001)(citing Owen v. Kerr McGee Corp., 698 F.2d 236, 240 (5th Cir. 1983)).

The expert's testimony must be both relevant and reliable.

21

<u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 152 (1999); <u>Smith v. Goodyear Tire & Rubber Co.</u>, 495 F.3d 224, 227 (5th Cir. 2007); <u>see also</u> Fed. R. Evid. 702 & advisory committee's note, 2000 Amends. The burden of establishing this predicate for the expert's testimony falls on the party producing the expert. <u>See</u> <u>Moore v. Ashland Chem. Inc.</u>, 151 F.3d 269, 276 (5th Cir. 1998). The trial court has the responsibility of determining whether that party has met its burden. Fed. R. Evid. 104(a); <u>Mathis v. Exxon Corp.</u>, 302 F.3d 448, 459-60 (5th Cir. 2002); <u>Daubert v. Merrell Dow Pharms., Inc.</u>, 509 U.S. 579, 589 (1993). The court also determines, as a matter of law, whether the expert is qualified to testify on the subjects on which he offers opinions. <u>Mathis</u>, 302 F.3d at 459-60. The trial judge has "wide latitude in determining the admissibility of expert testimony;" yet, "the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702, advisory committee's note, 2000 Amends.; <u>Wilson v. Woods</u>, 163 F.3d 935, 936-37 (5th Cir. 1999)(quoting <u>Watkins v. Telsmith, Inc.</u>, 121 F.3d 984, 988 (5th Cir. 1997)).

To be relevant, the testimony must assist "the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702; <u>see also</u> <u>Hicks</u>, 389 F.3d at 524 (5th Cir. 2004)(quoting <u>United States v. Bourgeois</u>, 950 F.2d 980, 987 (5th Cir. 1992)); <u>Daubert</u>, 509 U.S. at 591. The Federal Rules of Evidence define relevant evidence as that which "has any tendency

to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401.  In other words, the expert testimony must be applicable to the facts in issue.  <u>Daubert</u>, 509 U.S. at 592-93.

Reliability hinges on the sufficiency of the facts or data upon which the opinion is based, the dependability of the principles and methods employed, and the proper application of the principles and methods to the facts of the case.  <u>See</u> Fed. R. Evid. 702.  The trial judge must make certain that the expert applied "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  <u>Kumho Tire Co., Ltd.</u>, 526 U.S. at 152.

## B.  **Expert Opinion**

Plaintiff designated Becker to testify about "damages to the property caused by wind and hail and recommendations to repair damages caused by wind and hail."[33]  Plaintiff explained in more detail that,

> Becker will give opinions regarding the cause of damage to Plaintiff's property.  [Becker] will testify that wind and hail damaged Plaintiff's roof.  [Becker] will also testify that structural and/or water damage to the property was from wind and hail damage that compromises the roof and will cause intrusion openings which will result in wet conditions causing degradation of various building

---

[33]    Doc. 49-1, Ex. 1 to Def. Great Northern's Mot. to Exclude, Pl.'s Expert Disclosures p. 2.

23

> materials.   [Becker]  will  further  testify  that
> leaks  will  likely  result  at  all  areas  of  roof
> openings.   [Becker]  will  further  testify  to  the
> extent of damage sustained by the property.[34]

Becker  received  a  bachelor  of  science  in  water  resources management with  a  minor  in  chemistry  and  a  master  of  science  in civil  and  environmental  engineering  from  the  University  of Wisconsin.[35]  Becker  is  a  registered  professional  engineer  and  has worked  in  the  construction  and  engineering  fields  for  twenty-five years.[36]   In  1998,  Becker  founded  Becker  Engineering,  where  he serves  as  the  Chief  Operating  Officer.[37]   Becker  has  particular specialized  knowledge  in  the  areas  of  "hurricane  damage,  moisture control,  water  damage  cause  and  origin,  structural  failure, foundations, and drainage."[38]

Becker  observed  three  out  of  the  five  properties  in  this  case, opining  that  the  damage  was  caused  by  the  storm  in  May  2013,  basing his  opinion  on  a  visual  inspection,  interviews  with  Plaintiff's employees,  and  weather  data.[39]   Becker  inspected  the  properties  in

---

[34]    Id.

[35]    See Doc. 49-1, Ex. 2 to Def. Great Northern's Mot. to Exclude, Becker's Expert Report 4400 I-40 p. 17.

[36]    See id.

[37]    See id.

[38]    Doc. 49-1, Ex. 1 to Def. Great Northern's Mot. to Exclude, Pl.'s Expert Disclosures p. 2.

[39]    See Doc. 49-1, Ex. 2 to Def. Great Northern's Mot. to Exclude, Becker's Expert Reports.

April 2016.[40]  Becker looked to weather data to help determine what the conditions were like on May 28, 2013.[41]  Upon his inspection of the 4400 I-40 property, he spoke to several of Plaintiff's employees, who helped him pinpoint that damage was from the May 2013 storm, as he said they told him that the leaks were noticed after this storm.[42]  This, along with the weather data and visual inspection, was how Becker was able to rule out other storms as the cause of the damage.[43]  As to the other two properties, Becker also talked to employees, conducted a visual inspection, and utilized weather data.[44]

## C.  **Motion to Exclude**

In its motion, Great Northern challenges Becker's opinions, contending that they lack a reliable foundation and methodology, and are therefore speculative.  Specifically, Great Northern takes issue with the methods by which Becker traced the damage to this

---

[40]    See Doc. 49-1, Ex. 2 to Def. Great Northern's Mot. to Exclude, Becker's Expert Report 4400 I-40 p. 1; Doc. 49-1, Ex. 2 to Def. Great Northern's Mot. to Exclude, Becker's Expert Report 6201 Hillside p. 1; Doc. 49-1, Ex. 2 to Def. Great Northern's Mot. to Exclude, Becker's Expert Report 6203 Hillside 221.

[41]    See, e.g., Doc. 49-1, Ex. 2 to Def. Great Northern's Mot. to Exclude, Becker's Expert Report 4400 I-40 p. 9.

[42]    See Doc. 49-1, Ex. 3 to Def. Great Northern's Mot. to Exclude, Becker's Dep. pp. 41-47, 52-56.

[43]    See Doc. 49-1, Ex. 2 to Def. Great Northern's Mot. to Exclude, Becker's Expert Report 6201 Hillside p. 1; Doc. 49-1, Ex. 2 to Def. Great Northern's Mot. to Exclude, Becker's Expert Report 6203 Hillside p. 1; Doc. 49-1, Ex. 3 to Def. Great Northern's Mot. to Exclude, Becker's Dep. pp. 41-67

[44]    See Doc. 49-1, Ex. 2 to Def. Great Northern's Mot. to Exclude, Becker's Expert Report 6201 Hillside p. 1; Doc. 49-1, Ex. 2 to Def. Great Northern's Mot. to Exclude, Becker's Expert Report 6203 Hillside p. 1.

particular storm at the 4400 I-40 property, citing the fact that many other storm events with high winds took place before and after this storm, and that Becker relied on information from Plaintiff's employees. Great Northern deposed two such employees, Veach and Ortega, neither of whom, Great Northern contends, "could support Becker's theory that the [sic] May 2013 was the probable date of loss because of contemporaneous leaks."[45] Additionally, Great Northern challenges that the inspections by Becker took place almost three years after the storm damage occurred. As to Becker's conclusions regarding hail damage, Great Northern contends that Becker's methodology could not rule out all hail events that took place prior to the May 2013 storm. As to the other two properties, Great Northern contends that his methodology was also unreliable and speculative.

Great Northern focuses on the fact that Becker testified that he spoke to Plaintiff's employees, names of whom he could not remember other than Veach. Additionally, when Plaintiff noted it was Veach and Ortega that Becker spoke with and they were deposed, Veach said that while she did walk him around, she did not show him areas where leaks occurred, and the building she showed him did not have a skylight, as Becker stated, and Ortega testified that she did not work for Plaintiff at the time of the storm. Great

---

[45]    Doc. 49, Def. Great Northern's Mot. to Exclude p. 5; Doc. 49-1, Ex. 4 to Def. Great Northern's Mot. to Exclude, Veach's Dep. pp. 13-14, 18, 22; Doc. 49-1, Ex. 5 to Def. Great Northern's Mot. to Exclude, Ortega's Dep. pp. 10, 15.

Northern contends that this makes Becker's factual foundation and methodology unreliable, and therefore inadmissible.  The court disagrees.  The gist of Great Northern's complaints go to the credibility of Becker's testimony, not the reliability of his methodology.  This is not a basis to exclude his testimony.  Great Northern also takes issue with the fact that the inspections took place three years after the storm event.  This can also be tested in cross-examination.

Great Northern contends that Becker did nothing to rule out other storm events that could cause the hail and wind damage to these properties.  However, as evidenced in his deposition and reports, Becker spoke with employees, observed the properties, and looked at weather data and maintenance reports.  In determining that hail damage could be linked to this storm event, Becker found that there had been no maintenance report from prior storms and that the claim in this case was the first involving hail of the size observed in this case.  While this did not completely rule out other possibilities, as Becker acknowledges in his testimony, he did not base his findings on mere speculation as Great Northern contends.  Additionally, Becker explained that "nobody [in this] business goes through the detail that's needed for the previous 20 to 30 years, month by month, to rule out each event.  I just don't see that done, because it starts with the claim event and the

27

observation of damage."[46]   Great Northern can challenge the fact that Becker did not rule out all other storm possibilities on cross-examination.

The court agrees with Plaintiff that Great Northern's challenges to Becker's opinion go to the weight, not the admissibility, of the opinion.   Becker has the appropriate education, experience, and accreditation to evaluate the information he collected.   After reviewing the evidence in this case, the court finds that Becker's methodology meets the Daubert criteria and warrants allowing the jury to hear his opinion.   It will be up to the jury to determine if his testimony is factually credible.   Great Northern's motion to exclude Becker's testimony is denied.

## V.   Conclusion

Based on the foregoing, the court **RECOMMENDS** that Plaintiff's motion to remand be **DENIED** and Gordon's motion for summary judgment be **GRANTED.**   Therefore, Gordon should be **DISMISSED** from this lawsuit.   Great Northern's motion to exclude the testimony of Becker is **DENIED.**

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto

---

[46]    Doc. 49-1, Ex. 3 to Def. Great Northern's Mot. to Exclude, Becker's Dep. p. 81.

pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.  Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 16th day of February, 2018.

_____
U.S. MAGISTRATE JUDGE